Cahill, Appellant, *v.* Philadelphia.

Argued April 29, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*Robert G. Kelly,* with him *William R. Deasey* and *Kelly, Deasey & Scanlan,* for appellant.

*Abraham Wernick,* Deputy City Solicitor, with him *Mitchell S. Lipschutz,* Assistant City Solicitor, *Jerome J. Shestack,* First Deputy City Solicitor and *Abraham L. Freedman,* City Solicitor, for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, May 23, 1955:

Plaintiff is the proprietor of a restaurant, holds a retail liquor license, and sells alcoholic beverages to his patrons. He brought the present action in equity, on behalf of himself and all others similarly engaged in Philadelphia, to restrain the City from applying its mercantile license tax to receipts from the sale of liquors. The court below dismissed the complaint.

Acting under the authority of the so-called Sterling Act of August 5, 1932, P.L. 45, the City passed an Ordinance of December 9, 1952, imposing a mercantile license tax on all persons engaged in business within the City, the tax to be measured by the gross receipts. The Sterling Act provided, however, that the City should not have authority "to levy, assess and collect, . . . any tax on a privilege, transaction, subject or occupation, or on personal property, which is now or may hereafter become subject to a State tax or license fee." Plaintiff has regularly paid the tax on the gross receipts of his business other than those derived from the sale of alcoholic beverages, but contends that the receipts from his sale of liquors are exempt from taxation by the City because of the fact that he is compelled to pay and does pay to the State a license fee of $600.00 per annum under the provisions of the Liquor Code of April 12, 1951, P.L. 90.

The license fee exacted by the Liquor Code is undoubtedly, from one aspect at least, a "true" license fee and not a mere registration charge. Not only is it substantial in amount but the Code expressly pre-

scribes a separate registration or filing fee of $10.00 per annum. There are, however, certain other provisions of the Liquor Code which raise the real question here involved.

Section 405(c) of the Act provides that "All license fees authorized under this section shall be collected by the board *for the use of the municipalities* in which such fees were collected", "municipality" being defined in the Act as meaning "any city, borough, incorporated town, or township of this Commonwealth." Section 801(a) provides that "The following fees collected by the [Pennsylvania Liquor Control] board under the provisions of this act shall be paid into the State Treasury through the Department of Revenue into a special fund to be known as 'The Liquor License Fund': (1) License fees for hotel, restaurant and club liquor licenses; (2) License fees for retail dispensers' (malt and brewed beverages) licenses." Section 801(b) provides that "The moneys in the Liquor License Fund shall, on the first days of February and August of each year, be paid by the board to the respective municipalities in which the respective licensed places are situated, in such amounts as represent the aggregate license fees collected from licenses in such municipalities during the preceding period."

It thus appears that although the Code, in other sections, gives to the Liquor Control Board the power and the duty to see that the provisions of the Act are properly obeyed and to take such measures and make such investigations as will detect the violations of any of the provisions thereof, the Legislature did not intend that the revenue derived from the payments of the license fees should be used by the State as reimbursement for the expense of the supervision and regulation of the liquor business, and it is not in fact so used. Nor, in turning over such fees to the municipalities, is

there any provision, express or implied, that they are to be devoted locally to that purpose. In Philadelphia the fees are actually paid into the general fund of the City and appropriated for municipal purposes without any restriction whatever. There is thus lacking one of the distinguishing features of a license fee set forth in *National Biscuit Co. v. Philadelphia*, 374 Pa. 604, 615, 98 A. 2d 182, 188, namely, that the legislative purpose in exacting the charge is to reimburse the licensing authority for the expense of the supervision and regulation of the business so licensed.

Even, however, were it conceded that the $600 per annum paid by plaintiff under the Liquor Code is, in general, a "true" license fee, the question still remains whether it is the kind or type of license fee referred to in the Sterling Act. In *McClelland v. Pittsburgh*, 358 Pa. 448, 57 A. 2d 846, we held that the tax imposed under the Act of June 17, 1913, P.L. 507, was not a "State tax" within the meaning of the prohibition in the so-called "Tax Anything" Act of June 25, 1947, P.L. 1145 (which contained a limitation on the authority of the municipal legislative body similar to that embodied in the Sterling Act), because it was expressly imposed *for county purposes.* In the same case we likewise held that the tax imposed under the Act of June 20, 1947, P.L. 733, was not a "State tax" within the meaning of the "Tax Anything" Act because it was imposed *for public school purposes in school districts of the first class.* So also in *Federal Drug Co. v. Pittsburgh*, 358 Pa. 454, 57 A. 2d 849, the tax imposed by the Act of June 20, 1947, P.L. 745, was held not to be a "State tax" because it too was to be used *for public school purposes in school districts of the first class.* The basis of these decisions was that the provision in the Act of June 25, 1947, P. L. 1145, which prohibited the municipality from imposing any tax

on a privilege or property subject to a State tax, meant by "State tax" only one that was imposed for general State purposes, not one that was authorized and applied for the benefit of local political subdivisions. The obvious reason for the prohibition was to prevent municipalities from duplicating, conflicting or competing with taxes the revenue derived from which was intended to meet State needs. But the rule thus proclaimed in the *McClelland* and *Federal Drug Co.* cases in regard to a *tax* imposed by the State for local purposes manifestly holds equally true in the case of a *license fee* imposed by the State for local purposes. Accordingly, the annual payments required by the Liquor Code are not license fees within the intendment of that term as employed in the Sterling Act and therefore do not prevent the City of Philadelphia from applying its mercantile license tax to the gross receipts derived from plaintiff's sale of alcoholic beverages.

Decree affirmed at appellant's cost.