## Labe's Men's Shop v. Young

*Leon H. Kline*, for plaintiff.

*Morley W. Baker*, Assistant Attorney General, for Commonwealth.

BOWMAN, J., September 14, 1964.—This matter is before us for disposition of defendant's preliminary objections in the nature of a demurrer to plaintiff's amended complaint in mandamus whereby plaintiff seeks refund of certain contributions paid by it into the Unemployment Compensation Fund.

Under these circumstances and for this limited purpose, we accept as true the averments of plaintiff's amended complaint which establishes that Labe's Men's Shop (Labe's) is a Pennsylvania business corporation which had been engaged in the retail sale of men's apparel; that during the period of time it was so engaged in business employer contributions had been paid by it into the Unemployment Compensation Fund; that such contributions were made "on behalf of" four named individuals who were the sole shareholders of the corporation and all of whom were engaged in the "management and operation" of the business; that the corporation ceased to do business on a particular date; and that thereafter Labe's had timely filed an application for refund of contributions paid into the fund on behalf of such individuals which application was refused by the Department of Labor and Industry. From these facts Labe's contends that the contributions in question were erroneously paid into the fund because the named individuals were the owners of the business and therefore self-employed and were not "employed" by it within the meaning of the Unemployment Compensation Law;[1] and concludes that it is therefore entitled to the refund sought. Hence this suit.

Defendant's preliminary objections demur to plaintiff's amended complaint as not stating a good cause of action for the reason that the application of the pertinent statutory law to the facts averred in the amended complaint establishes that the employer contributions

[1] Act of December 5, 1936, P. L. 2897 (1937), as amended, 43 PS §784, et seq.

in question were lawfully and properly paid by a corporation with respect to wages paid by it to persons in its employment, which employment includes services of officers to a corporation.

The pertinent provisions of the Unemployment Compensation Law, supra, are as follows:

Section 301 of the act[2] imposes upon each "employer" an employer contribution at specified rates on the "wages paid by him for employment."

Section 4 of the act[3] sets forth, among others, the following definitions:

"Section 4    Definitions. . . .

"(j) 'Employer' means every . . . (4) corporation . . . who or which employed or employs any employe . . . in employment subject to this act for some portion of a day during a calendar year, . . .

"(l) (1) 'Employment' means all personal service performed for remuneration by an individual under any contract of hire, express or implied, written or oral, including . . . service as an officer of a corporation. . . .

"(x) 'Wages' means all remuneration (including the cash value of mediums of payment other than cash), paid by an employer to an individual with respect to his employment, . . .

"(6) Notwithstanding any other provisions of this subsection, wages shall include all remuneration for services with respect to which a tax is required to be paid under any Federal law imposing a tax against which credit may be taken for contributions to be paid into a state unemployment fund."

To overcome the application of these statutory provisions, which indisputably impose employer contributions on corporations with respect to remuneration paid to individuals in its employment, including serv-

---

[2] 43 PS §781.
[3] 43 PS §753.

ices of officers, plaintiff contends that the four named individuals were the sole shareholders of plaintiff corporation and that they were therefore, even though engaged in its management and operations, self-employed and hence not in the "employment" of the corporation.

To support this contention plaintiff insists, as it must, that the corporate entity of plaintiff be disregarded. It cites as authority for this proposition a series of decisions of the Pennsylvania Superior Court[4] which hold that for the purpose of determining *eligibility for unemployment compensation benefit claims* filed by claimants who have substantial ownership interests in their corporate employer, it is proper for the compensation authorities to pierce the corporate veil to ascertain the voluntary nature of their unemployment upon their separation from corporate employment, or whether a claimant was, in fact, self-employed within the meaning of the act.

In DePriest Unemployment Compensation Case, 196 Pa. Superior Ct. 612 (1961), the Superior Court stated the principle to be as follows, page 616:

"While it appears that we have heretofore approved the ignoring of the corporate entity only in cases where the board found voluntary termination of employment under Section 402 (b) (1) of the Act, the same principle is applicable in determining whether the claimants, in fact, were 'unemployed' under the act, or were self-employed persons whose business merely proved to be unremunerative during the period for which the claim for benefits was made."

Plaintiff urges that these cited Superior Court decisions compel a similar result in this case since the Un-

---

[4] Hamburg Unemployment Compensation Case, 192 Pa. Superior Ct. 598 (1960); Depriest Unemployment Compensation Case, 196 Pa. Superior Ct. 612 (1961); Freas Unemployment Compensation Case, 201 Pa. Superior Ct. 150 (1963); Carbone Unemployment Compensation Case, 201 Pa. Superior Ct. 543 (1963); and other cases cited in these cases.

employment Compensation Law contains but one set of definitions of the meaning of such key words as "employer," "employe" and "employment" which are equally applicable to determinations of liability for employer contributions as they are to determinations of eligibility for benefits.

In advancing this argument, however, plaintiff has chosen to ignore or overlook the fundamental question upon which its conclusion must rest. The issue is not one of statutory construction or the application of statutory definitions to a given set of facts but rather one of whether there is any authority in law or reason to apply to this case the doctrine of disregarding the corporate entity, also frequently referred to as piercing the corporate veil.

To do so would require us to pierce the corporate veil at the request of and for the benefit of the corporate entity itself or for the benefit of its constituent shareholders, which would constitute, in our opinion, a novel and wholly illogical extension of this doctrine which arose to serve the ends of justice and public policy and not to defeat them as its application would do in this case.

The concept of a corporate entity having a personality separate and apart from that of its constituent shareholders is a creature of our jurisprudence designed to accomplish desirable social and economic ends. Where, however, slavish adherence to this concept would work a wrong, result in the evasion of a statute or produce obvious inequities our courts have pierced the corporate veil to overcome an otherwise undesirable result. This exception to the concept of immutable corporate entity has been stated by the Pennsylvania Supreme Court in Gagnon v. Speback, 389 Pa. 17 (1957), to be, page 21:

". . . . . that the fiction (of corporate entity) will be disregarded and the individuals and corporation

considered as identical whenever justice or public policy demand it and when the rights of innocent parties are not prejudiced thereby nor the theory of corporate entity made useless." (parenthesis supplied)

Our research has failed to disclose a single decision in this State or in others wherein the doctrine was invoked upon the application of the corporate entity itself or which would result only in benefit to itself or that of its aggregate ownership.

Here four named individuals, constituting the aggregate ownership of plaintiff, chose to operate the business in question in corporate form, and in doing so they or their predecessors voluntarily invoked and brought into being a corporate entity entitled to the protection and benefits and subject to the responsibilities of corporations as prescribed by the applicable statutory law of the Commonwealth. By the averments of plaintiff's amended complaint the corporate entity itself and not its four shareholders admits to being engaged in the retail sale of men's apparel and admits that the four individuals were engaged in the management and operation of the corporate entity. Whatever reason may exist for its ceasing to do business, the hard fact remains that for the period of time here involved it did carry on its business in corporate form for precisely the purposes for which it was incorporated. It is difficult to imagine a more classic example "of (the) corporate entity (being) made useless" than would obtain if the doctrine of disregarding such entity were to be applied in this case.

As set forth above, the Unemployment Compensation Law imposes employer contributions upon employers, including corporations, who or which employ individuals in employment. Such contributions have repeatedly been held to be "taxes upon the right to employ": Pittsburgh Petition, 376 Pa. 447 (1954); In Re Appeal of Edgewood Amusement Co., 82 Dauph. 123 (1964).

Hence we have a situation here where a corporation admittedly engaged in business and having individuals engaged in its management and operation is seeking to have its corporate status disregarded, which if so disregarded would result in the avoidance of a tax for which it is otherwise indisputably liable. Such a result, in our opinion, would serve neither the ends of justice nor public policy but would rather defeat them.

While not specifically advanced, there underlies plaintiff's argument the apparent dilemma in which some small closely held corporations and their owners find themselves in being subject to employer contributions under the Unemployment Compensation Law, with the possibility that a substantial shareholder of the corporation upon his termination of employment by it being declared ineligible for compensation benefits under the authority of the cited Superior Court decisions. This suggested inequity, however, is more apparent than real and misconceives the intent and purposes of the law. As stated in Edgewood Amusement Company, Inc., supra, pages 125-126:

". . . The Unemployment Compensation Law may aptly be termed a statute having two somewhat related but nevertheless distinct and separate purposes. The one purpose is that of creating a fund out of which compensation benefits may be paid to persons who are unemployed through no fault of their own. To accomplish this purpose the act imposes contributions upon all employers, as defined in said act, which contributions are paid into the fund created for the payment of compensation benefits to eligible persons.

\*　　\*　　\*

". . . The imposition of the tax is absolute and without regard to the economic status of the employe or to any job protection which he may happen to enjoy by reason of such employment or any other employment.

"The other purpose or objective of this act is to afford to certain persons unemployment compensation benefits, and the provisions thereof establishing eligibility, amount and duration of such benefits accomplish this purpose. None of the many and complex provisions relating to benefits provide for or even suggest the conclusion which appellant would have the Court reach. While it is true that a fully employed person is not eligible for unemployment compensation benefits whether so employed in covered or noncovered employment, this is so because of the *fact* of employment and not the *reason* for being so employed."

The *quid pro quo* relationship of employer contributions to eligibility for compensation benefits which this "injustice" suggests simply does not exist within the intent and purposes of the law or under its provisions.

Plaintiff, being a corporation and its aggregate ownership having elected to conduct business under the corporate entity form, cannot now choose to have its corporate entity disregarded and thus avoid employer contributions for the sole benefit of itself or that of its constituent owners. Under the provisions of the act it was, therefore, liable for employer contributions with respect to wages paid to individuals engaged in its "management and operation" and "on behalf" of whom the contested employer contributions were in fact admittedly made. Plaintiff, being liable for such employer contributions, is not now entitled to their refund.

For the foregoing reasons, we therefore make the following

### Order

And now, September 14, 1964, defendant's preliminary objections to plaintiff's amended complaint are sustained and plaintiff's amended complaint is hereby dismissed.